UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ASHLEY MATTHEWS and
VERONICA MEDRANO, individually and on behalf of all
others similarly situated,

                     Plaintiffs,

v.                                     Case No.

COMMERCIAL CONDOMINIUM MANAGEMENT        FLSA/VOWA Collective Action
COMPANY,                                  Demand for Jury Trial

                    Defendant.

## COMPLAINT

Plaintiffs Ashley Matthews and Veronica Medrano, individually and on behalf of all

others similarly situated ("Plaintiffs"), respectfully move for judgment against Defendant

Commercial Condominium Management Company ("CCMC" or "Defendant") as follows:

### I.     SUMMARY OF ACTION

1.     This is a claim for unpaid overtime compensation in violation of the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia

Overtime Wage Act, VA Code, § 40.1-29.2 ("VOWA") arising out work that Plaintiffs, and

others similarly situated, performed as employees of Defendant. Plaintiffs also assert individual

claims for unpaid regular wages and unauthorized withholdings from wages in violation of the

Virginia Wage Payment Act, VA Code § 40.1-29 ("VWPA").

2.     Plaintiffs allege Defendant violated and continues to violate the FLSA and

VOWA through its practice of not paying overtime compensation to Plaintiffs and other similarly situated employees when they work more than 40 hours in a week.

3.    Plaintiff Matthews worked for Defendant as an Assistant Property Manager.

4.    Plaintiff Medrano, also known at times during her employment as Veronica Echarik or Veronica Medrano-Echarik, worked for Defendant as a Receptionist and later as an Accounts Payable/Receivable Assistant, also called an Office Manager.

5.    The FLSA Collective is made up of all persons who have been employed by Defendant as an Assistant Property Manager, Receptionist, Accounts Payable/Receivable Assistant, Office Manager, or in a comparable position, within three years prior to this action's filing to the trial of this action (the "FLSA Collective Period").

6.    Plaintiffs, on behalf of themselves and all similarly situated employees, seek unpaid overtime wages, liquidated damages, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's FLSA violations.

7.    The VOWA Collective is made up of all persons who have been employed by Defendant as an Assistant Property Manager, Receptionist, Accounts Payable/Receivable Assistant, Office Manager, or in a comparable position, at any time from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

8.    Plaintiffs, on behalf of themselves and others similarly situated, seek unpaid overtime wages, liquidated damages, triple damages, pre and post judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's VOWA violations.

9.    In addition, Plaintiffs individually allege that Defendant failed to pay them their regular wages for the final nearly-two weeks of their employments, respectively, in violation of

the VWPA.

10.     In addition, Plaintiff Medrano individually alleges that throughout 2021 Defendant withheld a substantial part of her wages purportedly to pay for health insurance for Plaintiff's child. This withholding directly contradicted the relevant child support order, was not authorized by law, and was not made pursuant to any written and signed authorization of Plaintiff, in violation of the VWPA.

11.     Plaintiffs individually seek unpaid regular wages, reimbursement of unauthorized withholdings from wages, liquidated damages, triple damages, pre and post judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's VWPA violations.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, as well as 29 U.S.C. § 216 in that the Plaintiffs may bring this action in any appropriate United States District Court.

13.     The Court has supplemental jurisdiction over the state law VOWA and VWPA claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy. In short, Defendant's pay policies and practices with respect to the non-payment of overtime allegedly violate the FLSA and VOWA, and with respect to the non-payment of regular wages for Plaintiffs' final periods of employment and unauthorized withholdings from wages, allegedly violate the VWPA.

14.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(C) since the acts and omissions giving rise to this lawsuit have taken place in this division in

the Eastern District of Virginia.

15.     Defendant is subject to personal jurisdiction in the Commonwealth of Virginia. Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

### III.     PARTIES

16.     Plaintiff Matthews is a resident of Virginia who was employed by Defendant in a position called "Assistant Property Manager." Plaintiff Matthews worked for Defendant from approximately November 18, 2019 through January 27, 2022. Plaintiff was an "employee" as defined in the FLSA, VOWA, and VWPA.

17.     Plaintiff Medrano is a resident of Virginia who was employed by Defendant in a position called "Receptionist" and later as an "Accounts Payable/Receivable Assistant," also interchangeably referred to as an "Office Manager." Plaintiff Medrano worked for Defendant from approximately October 13, 2016 through January 28, 2022. Plaintiff was an "employee" as defined in the FLSA, VOWA, and VWPA.

18.     Defendant Commercial Condominium Management Company is a Virginia corporation with its principal office address (according to filings with the Virginia State Corporation Commission) at 8456 Tyco Rd, Ste A, Vienna, VA, 22182 - 7517. Defendant is an "employer" as defined by the FLSA, VOWA, and VWPA.

19.     At all times relevant, Defendant exercised control over the terms and conditions of the employment of Plaintiffs and other similarly situated workers.

20.     Plaintiff is informed, believes, and thereon alleges that Defendant's gross annual sales made or business done is $500,000.00 or greater. Defendant operates in interstate

commerce by, among other things, buying and/or selling goods and/or transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states.

## IV. FACTUAL ALLEGATIONS

### A. Background – Defendant CCMC

21.     Defendant CCMC is a commercial real estate property management company. CCMC manages over 100 commercial, office, and condominium associations in the metropolitan Washington D.C. area.

22.     During the time period relevant to this action, CCMC has employed multiple Assistant Property Managers, Accounts Payable/Receivable Assistants, Office Managers, and Receptionists.

23.     During the entire time period relevant to this action, CCMC has had a policy and practice of not paying overtime compensation to its Assistant Property Managers, Accounts Payable Receivable Assistants, Officer Managers, and Receptionists when they worked more than 40 hours in a week.

24.     When these employees ask why they are not being paid overtime, CCMC's owners tell them (incorrectly) that they are not entitled to overtime compensation because they are "on salary."

### B. Background – Plaintiff Matthews

25.     From approximately November 18, 2019 through January 27, 2022, Plaintiff Matthews worked for Defendant.

26.     During the entire period of her employment, Plaintiff Matthews worked for

5

Defendant in a position called "Assistant Property Manager."

27. Assistant Property Managers are supervised by and report to CCMC's Property Managers.

28. Assistant Property Managers and Property Managers all work onsite at CCMC's corporate office, or remotely.

29. Defendant has approximately 5-6 Assistant Property Managers and 5-6 Property Managers.

30. Plaintiff Matthews was supervised by and reported to Property Manager Maria Quigley-Skillin.

31. Defendant's "Assistant Property Managers" including Plaintiff Matthews were not actually managers. They did not manage the operations of CCMC.

32. The primary job duty of the Assistant Property Manager position with CCMC was to perform routine data entry and fill out template paperwork at the instruction of the Property Manager. This duty entailed:

a. inputting data regarding maintenance requests into CCMC's computer system;

b. updating and inputting contact information for vendors in CCMC's computer system;

c. emailing standard notices to properties or owners,

d. inputting data to generate utility invoices and sending the invoices to owners (after review by the Property Manager);

e. saving documents received via email from vendors into CCMC's computer system;

f.      inputting work orders for maintenance items into CCMC's computer system; and

g.      similar tasks at the instruction of the Property Manager.

33.     More than about 90% of the Assistant Property Manager job duties involved entering data in the computer system and filling out template paperwork.

34.     At all times relevant, all CCMC Assistant Property Managers have had the same basic job duties.

35.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have authority to hire or fire employees.

36.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have authority to discipline employees.

37.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have authority to negotiate prices, negotiate contracts, or to make payments or purchases on behalf of the company.

38.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have authority to decide the amount to charge customers, or to negotiate with customers.

39.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have the authority to bind CCMC to contracts.

40.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have the authority to negotiate with vendors.

41.     As Assistant Property Managers for CCMC, Plaintiff Matthews and other Assistant Property Managers did not have the authority to advertise the company's services or

properties or develop marketing strategies.

42.      All decisions with respect to matters of significance were made by CCMC's Property Managers and owners. Assistant Property Managers did not have the ability to exercise discretion and independent judgment with respect to matters of significance. Their primary duty was data entry and paperwork at the instruction of the Property Managers.

43.      As an Assistant Property Manager, Plaintiff Matthews was paid a rate equal to **$ 25.48** per hour.

44.      Upon information and belief, CCMC's other Assistant Property Managers received similar rates of pay. Plaintiff Matthews and other Assistant Property Managers were not paid for hours worked above 40 per week.

45.      CCMC employed and continues to employ at about 5-6 Assistant Property Managers.

46.      CCMC did not have a timekeeping system for Assistant Property Managers (or any other employees). There was no system for clocking in or out, and no system for Assistant Property Managers to report their hours worked each week.

47.      During her employment as an Assistant Property Manager with CCMC, Plaintiff Matthews regularly worked more than 40 hours per week. Other Assistant Property Managers also worked more than 40 hours in some weeks.

48.      CCMC knew or should have known Plaintiff Matthews and similarly situated employees were working more than 40 hours per week because of the amount of work they were assigned, because their supervisors instructed them to work and saw them working outside of regular hours, their supervisors communicated with them on work issues outside of regular

hours, and the time stamps on their data entry and emails will confirm that Plaintiff Matthews and similarly situated worked these hours, among other reasons.

49. The software Assistant Property Managers used for data entry for most of Plaintiff Matthews' employment was called Yardi Voyager. In October 2021, CCMC switched to Yardi Breeze.

50. Even though Plaintiff Matthews and similarly situated employees regularly worked more than 40 hours per week, CCMC did not pay them overtime compensation for the time they worked in excess of 40 hours per week.

51. Plaintiff Matthews' pay stubs indicate she was paid for no more than 40 hours each week, even though she worked more than 40 hours in the week.

52. During the time period approximately **11/18/2019 – 3/1/2020** Plaintiff Matthews worked approximately **45-55 hours per week**. This included working through lunch each day. She worked five days per week, Monday through Friday. She would start work at about 7:00am, work through lunch, take a break at around 4:00pm, and work an additional 0-2 hours in the afternoon and evening, for a total of approximately **9-11 hours per day, or 45-55 hours per week**. During this period, she worked at the CCMC office.

53. During the time period approximately **3/1/2020 – 6/1/2021** Plaintiff Matthews worked approximately **50-55 hours per week**. This included working through lunch each day. She worked five days per week, Monday through Friday. She would start work at about 8:00am, work through lunch, take a break at around 5:00pm, and work an additional 1-2 hours in the afternoon and evening, for a total of approximately **10-11 hours per day, or 50-55 hours per week**. During this period, she worked mostly from home. There was a brief time during this

period, early in the pandemic, when Plaintiffs and similarly situated employees worked in an assigned office / work-from home hybrid schedule, where they were given alternative days to be in the office and work from home. This was to limit the number of people in the office.

54.    During the time period approximately **6/1/2021 – 10/1/2021** Plaintiff Matthews worked approximately **55-60 hours per week**. This included working through lunch each day. She worked five days per week, Monday through Friday. She would start work at about 8:00am, work through lunch, take a break at around 5:00pm, and work an additional 2-3 hours in the afternoon and evening, for a total of approximately **11-12 hours per day, or 55-60 hours per week**. During this period, she worked from CCMC's office sometimes and from home sometimes.

55.    During the time period approximately **10/1/2021 – 1/27/2022** Plaintiff Matthews worked approximately **55-60 hours per week**. This included working through lunch each day. She worked five days per week, Monday through Friday. She would start work at about 8:00am, work through lunch, take a break at around 5:00pm, and work an additional 2-4 hours in the afternoon and evening, for a total of approximately **11-13 hours per day, or 55-65 hours per week**. During this period, she worked from CCMC's office sometimes and from home sometimes. On days during this period when she physically worked from CCMC's office, Plaintiff Matthews would start between 8:00am and 8:45am, due to her commute being longer after a move, work through lunch, and continue on after 5:00pm, working an additional 2 – 6 hours in the evening, for a total of **11 – 14 hours per day, or 55-70 hours per week**.

56.    During her employment, Plaintiff Matthews took off an estimated total of 41 days (6 weeks) for vacation and sick days.

57.     The precise start times and end times that Plaintiff Matthews worked varied sometimes, but the overall hours as estimated above are correct. CCMC was flexible about start times, and due to commutes and other factors, employees sometimes started a little earlier or later than 8:00am.

58.     CCMC knew Plaintiff Matthews worked these hours because of, inter alia, the amount of work that was assigned to Plaintiff and similarly situated employees, the time stamps on her data entry, computer login/logout, security camera footage, and emails confirming that she worked these hours, she discussed the long hours with her supervisors, and her supervisors saw her and communicated with her while she was working the overtime hours.

59.     Defendant failed to pay Plaintiff Matthews her regular wages for the final nearly-two weeks of her employment, covering the period January 17, 2022 through January 27, 2022. Despite Plaintiff Matthews working for Defendant throughout this period, Defendant did not pay her for this period at all.

**C.      Background – Plaintiff Medrano**

60.     From approximately October 13, 2016 through January 28, 2022, Plaintiff Medrano worked for Defendant.

61.     During the first part of Plaintiff Medrano's employment with CCMC, from October 13, 2016 to September 2017, she was a Receptionist.

62.     The primary duty of the Receptionist position with CCMC was doing clerical work: answering the phone, greeting customers, taking checks from unit owners, stamping those checks for processing, sending those to accounting for processing, sorting mail, distributing mail, distributing and sending out packages, and taking messages.

63.     Despite working more than 40 hours some weeks as a Receptionist, Plaintiff Medrano was not paid overtime compensation.

64.     CCMC has continued and continues to not pay its Receptionists overtime compensation, even though they work more than 40 hours some weeks.

65.     During the last four-plus years of Plaintiff Medrano's employment with CCMC, from September 2017 to January 28, 2022, she worked as an "Accounts Payable/Receivable Assistant," also sometimes called an "Office Manager." The terms were used to refer to the same basic duties. "Accounts Payable/Receivable Assistant" is a more accurate description. For clarity, Plaintiff and those employees with substantially the same basic duties are referred to herein as "Accounts Payable/Receivable Assistants."

66.     Accounts Payable/Receivable Assistants are supervised by and report to CCMC's owners. They did not and do not prepare the budget or provide tax-preparation services. The budgets are prepared by Property Managers and CCMC's owners, not Accounts Payable/Receivable Assistants. For and tax-preparation services and audits, CCMC contracts with 3-4 outside CPAs and accounting firms.

67.     Accounts Payable/Receivable Assistants all work onsite at CCMC's corporate office, or remotely if approved by CCMC's owners.

68.     At all times relevant, CCMC has employed approximately 3-4 Accounts Payable/Receivable Assistants.

69.     The primary job duty of the Accounts Payable/Receivable Assistant position was and is to perform routine data entry of invoices and checks into CCMC's computer system as instructed. This entails filling out an online template for processing each invoice and check. This

duty entails:

      a.      On the accounts payable side, entering information from invoices, receipts, and utility charges into CCMC's computer system; entering invoices submitted via email and regular mail; and calling vendors for their email addresses so they could update their certificates of insurance and 1099 information;

      b.      On the accounts receivable side, entering information from checks received into CCMC's computer system; filling out bank deposit slips for the following day's deposit; scanning each individual check to be later filed in CCMC's system to have a digital record; updating vendor contact information and adding new vendors to CCMC's computer system.

      c.      All Accounts Payable/Receivable Assistant tasks were done pursuant to instructions from CCMC's owners.

70.      Given CCMC's coverage of more than 100 properties, each with multiple vendors, the primary duty of an Accounts Payable/Receivable Assistant entails a large volume of data entry and paperwork. Plaintiff Medrano constantly had a stacked pile of invoices on her desk. She processed approximately at least 1500 - 2000 invoices monthly.

71.      More than 90% of the Accounts Payable/Receivable Assistant job duties involved entering data into the computer system and filling out routine paperwork, including journal entry posts or utility charge postings.

72.      All CCMC Accounts Payable/Receivable Assistants had similar job duties, all primarily involving data entry.

73.      Plaintiff Medrano's duties also included acting as a back-up Receptionist, which entailed doing the Receptionist duties listed above.

13

74.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have authority to hire or fire employees.

75.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have authority to discipline employees.

76.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have authority to negotiate prices, negotiate contracts, or to make payments or purchases on behalf of the company.

77.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have authority to decide the amount to charge customers, or to negotiate with customers.

78.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have the authority to bind CCMC to contracts.

79.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have the authority to negotiate with vendors.

80.     As Accounts Payable/Receivable Assistants for CCMC, Plaintiff Medrano and other Accounts Payable/Receivable Assistants did not have the authority to advertise the company's services or properties or develop marketing strategies.

81.     All decisions with respect to matters of significance were made by CCMC's Property Managers and owners. Accounts Payable/Receivable Assistants did not have the ability to exercise discretion and independent judgment with respect to matters of significance. Their

primary duty was routine data entry and paperwork at the instruction of their supervisors.

82.     As an Accounts Payable/Receivable Assistant, Plaintiff Medrano was paid a rate equal to **$17.16** per hour.

83.     Upon information and belief, CCMC's other Accounts Payable/Receivable Assistants received similar rates of pay. Plaintiff Medrano and other Accounts Payable/Receivable Assistants were not paid for hours worked above 40 per week.

84.     CCMC employed and continues to employ approximately 3-4 Accounts Payable/Receivable Assistants in at any given time.

85.     CCMC did not have a timekeeping system for Accounts Payable/Receivable Assistants, Receptionists, Assistant Property Managers, or any other position. There was no system for clocking in or out, and no system for employees to report their hours worked each week.

86.     During her employment as an Accounts Payable/Receivable Assistant with CCMC, Plaintiff Medrano regularly worked more than 40 hours per week. Other Accounts Payable/Receivable Assistant also worked more than 40 hours in some weeks.

87.     Plaintiff Medrano regularly worked more than 40 hours per week. CCMC knew she was working more than 40 hours per week because of the amount of work she was assigned, due to her supervisors instructing her to ensure each invoice was input in a timely manner for approval and check processing; because her supervisors instructed her to work and saw her working outside of regular hours; when she worked onsite her supervisors communicated with her on work tasks outside of regular hours; and the time stamps on her data entry and emails will confirm that she worked these hours, among other reasons.

88.     The software CCMC's employees used for data entry for most of Plaintiff Medrano's employment was called Yardi Voyager. In October 2021 the company switched to Yardi Breeze. They also used some Microsoft Excel, Microsoft Word, and Microsoft Outlook.

89.     Even though Plaintiff Medrano and other Accounts Payable/Receivable Assistants regularly worked more than 40 hours per week, CCMC did not pay them overtime compensation for the time they worked in excess of 40 hours per week. Plaintiff Medrano's pay stubs indicate she was paid for 40 hours each week, even though she worked more than 40 hours in the week.

90.     During the time period approximately **1/1/2019 – 12/31/19** Plaintiff Medrano worked approximately **50-60 hours per week**. On Monday through Friday, she would start work at about 8:00am, take a one-hour lunch at 12:00pm, work to 5:00pm, and then continue working an additional 3 hours in the evening until about 8:00pm, inputting invoices, for a total of approximately **11 hours per day, or 55 hours per week**. During this period, she worked at the CCMC office. In addition, during November 2019, she worked an additional 5 overtime hours per weekend (Saturday or Sunday) to process checks while another assistant was on vacation, for an additional roughly 20 hours of overtime. During 2019, she took about 25 days (5 weeks) off for medical issues (diabetes).

91.     During the time period approximately **1/1/2020 – 12/31/2020** (except for an extended period of leave in the summer and fall, and a hospital stay in December) Plaintiff Medrano worked approximately **45-50 hours per week**. On Monday through Friday, she would start work at about 8:00am, take a one-hour lunch at 12:00pm, work to 5:00pm, and then continue working an additional 1-2 hours in the evening until about 6:00-7:00pm, inputting invoices, for a total of approximately **9-10 hours per day, or 45-50 hours per week**. During

most of this period, she worked from home due to the pandemic. During 2020, she took about 16 weeks off (June 22 to October 14) after she went blind and had to have several eye surgeries to regain her eyesight. She returned to work October 14, 2020. In December 2020, she got Covid and spent 1.5 weeks in the hospital. The total time Plaintiff Medrano took off in 2020 was about 99 days (20 weeks).

92.     During the time period approximately **1/1/2021 – 12/31/2021** (except for September 2021) Plaintiff Medrano worked approximately **50 hours per week**. On Monday through Friday, she would start work at about 8:00am, take a one-hour lunch at 12:00pm, work to 5:00pm, and then continue working an additional 2 hours in the evening until about 7:00pm, inputting invoices, for a total of approximately **10 hours per day, or 50 hours per week**. During this period, she worked from CCMC's office sometimes and from home sometimes. During four weeks in September 2021, she did not work any overtime since the records her position used were being transferred to a new system. In addition, in 2021 she took about three weeks off for medical issues such as migraine headaches, Covid symptoms, and additional eye surgeries.

93.     During the time period approximately **1/1/2022 – 1/28/2022** Plaintiff Medrano worked approximately **45 hours per week**. This included working through lunch each day. She worked five days per week, Monday through Friday. She would start work at about 8:00am, work through lunch, and work to about 5:00pm, for a total of approximately **9 hours per day, or 45 hours per week**. During this period, she worked from home.

94.     The precise start times and end times that Plaintiff Medrano worked varied sometimes, but the overall hours as estimated above are correct. CCMC was flexible about start times, and due to commutes and other factors, employees sometimes started a little earlier or

later than 8:00am.

95.     CCMC knew Plaintiff Medrano worked these hours because the time stamps on her data entry, computer login/logout, security camera footage, and emails will confirm that she worked these hours, she discussed the long hours with her supervisors, and her supervisors saw her and communicated with her while she was working the overtime hours, and other reasons. They sometimes said goodbye to her when she was working in the evening.

96.     CCMC knew or should have known Plaintiff Medrano and similarly situated employees were working more than 40 hours per week because of the amount of work they were assigned, because their supervisors instructed them to work and saw them working outside of regular hours, their supervisors communicated with them on work issues outside of regular hours, and the time stamps on their data entry and emails will confirm that Plaintiff Medrano and similarly situated employees worked these hours, among other reasons.

97.     Throughout 2021, Defendant withheld a substantial part of Plaintiff Medrano's wages (approximately 17% of her gross wages) each pay period purportedly to pay for health insurance for Plaintiff's child.

98.     The relevant child support order provided that the child's father (not Plaintiff) pay for health insurance for the child. The child's father did pay for the health insurance and the child was covered by the father's health insurance.

99.     Nevertheless, despite the clear terms of the court order, in approximately December 2020, Defendant and its payroll agent notified Plaintiff that Defendant would be withholding from her wages to pay for health insurance for the child.

100.    Plaintiff Medrano did not provide any written and signed authorization for this

withholding from her wages.

101.     Despite Plaintiff Medrano promptly calling this unauthorized withholding to the attention of Defendant and its payroll agent, providing Defendant and its payroll agent with the relevant child support order and citing the governing provisions of the same, Defendant continued with and failed to correct the unauthorized withholding every pay period through the end of her employment.

102.     This withholding from Plaintiff Medrano's wages directly contradicted the relevant child support order, was not authorized by law, and was not made pursuant to any written and signed authorization of Plaintiff.

103.     Due to Defendant's unauthorized withholding of Plaintiff Medrano's wages, Defendant failed to pay Plaintiff this part of her earned wages, either on the regular pay periods when due or upon the termination of her employment.

104.     Defendant failed to pay Plaintiff Medrano her regular wages for the final nearly-two weeks of her employment, covering the period January 17, 2022 through January 28, 2022. Despite Plaintiff Medrano working for Defendant throughout this period, Defendant did not pay her for this period at all.

## D.     Background – Defendant's Knowledge of Overtime

105.     CCMC's owners told Plaintiffs and similarly situated employees that they were required to work as many hours as it took to get their jobs done.

106.     CCMC's owners told Plaintiffs (incorrectly) that they did not qualify for overtime compensation because they were "on salary."

107.     CCMC knew or should have known Plaintiffs and similarly situated employees

worked more than 40 hours some weeks because, inter alia, of the amount of work that was assigned to Plaintiffs and similarly situated employees, the time stamps on their data entry, computer login/logout, security camera footage, and emails confirming that they worked these hours, and their supervisors saw them working overtime, communicated with them about the long hours and communicated with them while they were working the overtime hours, and other means.

108. At all times relevant, CCMC did not pay Plaintiffs and similarly situated employees any overtime compensation for any of the hours they worked in excess of 40 hours per week.

109. CCMC had a policy and practice of not paying overtime compensation to Plaintiffs and similarly situated employees, including Receptionists, Assistant Property Managers, and Accounts Payable/Receivable Assistants, even though they worked in excess of 40 hours some weeks.

110. CCMC regularly scheduled or required Plaintiffs and similarly situated employees to work in excess of 40 hours per week.

111. Plaintiffs and similarly situated employees regularly worked in excess of 40 hours per week.

112. If CCMC maintained accurate employee time records, the records will show Plaintiffs and similarly situated employees working in excess of 40 hours per week.

113. Plaintiffs and similarly situated employees were entitled to overtime compensation equal to one and a half times their regular rate of pay for all time worked in excess of 40 hours per week.

**E. Defendant's Policy and Practice of Not Paying Overtime Compensation to Receptionists, Assistant Property Managers, and Accounts Payable/Receivable Assistants**

114. Even though Plaintiffs and similarly situated employees worked more than 40 hours in a week, Defendant did not pay them overtime compensation. Defendant did not pay its Receptionists, Assistant Property Managers, Accounts Payable/Receivable Assistants, or other similarly situated employees any compensation for hours worked in excess of 40 per week.

115. Defendant had a policy and/or practice of not paying overtime compensation to its Plaintiffs and other similarly situated employees, including Receptionists, Assistant Property Managers, and Accounts Payable/Receivable Assistants, for time worked in excess of 40 hours per week.

116. Defendant's pay records show its practice of not paying overtime compensation to Plaintiffs and similarly situated employees.

117. Defendant suffered and/or permitted Plaintiffs and similarly situated employees to work more than 40 hours per week without overtime compensation.

118. Defendant knew or should have known that its policy and/or practice of not paying Receptionists, Assistant Property Managers, and Accounts Payable/Receivable Assistants overtime compensation for time worked in excess of 40 hours per week violated the overtime provisions of the Fair Labor Standards Act and the Virginia Overtime Wage Act.

**F. Additional Allegations**

119. Plaintiffs and similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity.

120. Based on the nature of Plaintiffs and similarly situated employees' job duties,

there is no FLSA or VOWA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

121.     Defendant willfully violated the FLSA and VOWA by not paying Plaintiffs and similarly situated employees overtime compensation.

122.     At all relevant times Defendant intended to deprive its Plaintiffs and similarly situated employees of the overtime pay to which they were entitled to under the FLSA and VOWA, or acted with reckless disregard for their rights under the FLSA and VOWA.

123.     At all relevant times Defendant knowingly failed to pay Plaintiffs and similarly situated employees the overtime pay to which they were entitled to under the FLSA and VOWA.

## V.     FLSA COLLECTIVE ACTION ALLEGATIONS

124.     Plaintiffs file this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiffs on behalf of themselves and all other similarly situated employees. The similarly situated employees are as follows:

a.     **FLSA Collective**: All past and present employees of Defendant who have been employed by Defendant as an Assistant Property Manager, Receptionist, Accounts Payable/Receivable Assistant, Office Manager, or in positions having substantially similar job duties, within three years prior to this action's filing to the trial of this action (the "FLSA Collective Period").

125.     Defendant employs, and has employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

126.     These employees perform, and have performed, work which entitles them to

payment of overtime compensation which they have not received.

127. Plaintiff estimates there are at least 10 similarly situated employees who fit the above definition and were deprived of overtime pay.

128. Within the past three years, Plaintiffs and similarly situated employees were subject to a common plan or policy of Defendant to avoid paying overtime wages by simply not paying overtime wages to employees who were entitled to overtime wages.

129. Defendant's pay records, Defendant's practice of not tracking employee time, and time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendant's policy and practice of not paying overtime compensation to employees who fit the above definition.

130. Defendant compensated, and continues to compensate, those similarly situated to Plaintiffs on a uniform compensation basis common to Plaintiffs and other persons performing similar job functions.

131. Upon information and belief, Defendant's pay operations are centrally managed as a single enterprise, and Defendant's employees meeting the above definition are subject to common payroll practices.

132. Defendant's policy of not paying overtime compensation amounted to a willful or reckless disregard of its employees' rights under the FLSA.

133. Defendant had no good faith basis to believe that not paying overtime compensation was somehow allowable under the FLSA.

134. Plaintiffs assert that Defendant's willful disregard of the overtime wage laws described herein entitles Plaintiffs and similarly situated employees to the application of the

three (3) year limitations period.

135.     Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

136.     At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

137.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendant who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

### A.     Notice of Filing of Consent to Become a Party Plaintiff

138.     Plaintiffs hereby file their Written Consents to Become Party to Collective Action Under 29 U.S.C. § 216. Plaintiffs' Written Consent Forms are attached as Exhibits 1 and 2.

### VI.     VOWA COLLECTIVE ACTION ALLEGATIONS

139.     Plaintiffs file this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiffs on behalf of themselves and all other similarly situated employees. The similarly situated employees are as follows:

a.     **VOWA Collective**: All past and present employees of Defendant who have been employed by Defendant in Virginia as an Assistant Property Manager, Receptionist, Accounts Payable/Receivable Assistant, Office Manager, or in positions having substantially similar job duties, at any time from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

140. Defendant employs, and has employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

141. These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

142. Plaintiff estimates there are at least 10 similarly situated employees who fit the above definition and were deprived of overtime pay.

143. Within the VOWA Collective Period, Plaintiffs and similarly situated employees were subject to a common plan or policy of Defendant to avoid paying overtime wages by simply not paying overtime wages to employees who were entitled to overtime wages.

144. Defendant's pay records, Defendant's practice of not tracking employee time, and time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendant's policy and practice of not paying overtime compensation to employees who fit the above definition.

145. Defendant compensated, and continues to compensate, those similarly situated to Plaintiffs on a uniform compensation basis common to Plaintiffs and other persons performing similar job functions.

146. Upon information and belief, Defendant's pay operations are centrally managed as a single enterprise, and Defendant's employees meeting the above definition are subject to common payroll practices.

147. Defendant's policy of not paying overtime compensation amounted to a willful or reckless disregard of its employees' rights under the VOWA.

148. Defendant had no good faith basis to believe that not paying overtime compensation was somehow allowable under the VOWA.

149. Plaintiffs assert that Defendant's pay policies and practices and conduct described herein constitute Defendant "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

150. Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the VOWA.

151. At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the VOWA.

152. Defendant is liable under the VOWA for failing to properly compensate Plaintiffs and the VOWA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendant who have been denied overtime pay in violation of the VOWA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

**A.      Notice of Filing of Consent to Become a Party Plaintiff**

153. Plaintiffs hereby file their Written Consents to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiffs' Written Consent Forms are attached as Exhibits 1 and 2.

**VI.     CLAIMS**

**COUNT I: VIOLATIONS OF FAIR LABOR STANDARDS ACT**
**(Overtime Violations)**
**(On Behalf of Plaintiffs and FLSA Collective)**

154.     Plaintiffs allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

155.     At all times relevant herein, Defendant has been, and continues to be, an "employer," and each Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

156.     The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiffs and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

157.     By failing to compensate Plaintiffs and similarly situated employees with overtime compensation for their overtime hours worked, Defendant has violated, and continues to violate the FLSA.

158.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

159.     Plaintiffs hereby file their Written Consents to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiffs' Written Consent Forms are attached as Exhibits 1 and 2.

160.     Plaintiffs seek damages for themselves and all others similarly situated in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## COUNT II: VIOLATIONS OF VIRGINIA OVERTIME WAGE ACT
### (Overtime Violations)
### (On Behalf of Plaintiffs and VOWA Collective)

161.    Plaintiffs allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

162.    Plaintiffs currently do not know whether there are a sufficient number of potential Plaintiffs who physically worked for Defendant in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). A collective action for the VOWA claims is appropriate pursuant to VA Code §§ 40.1-29.2 and 40.1-29(J). Should discovery reveal as sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiffs reserve the right to amend to assert the VOWA claims as Rule 23 class action claims.

163.    The Virginia Wage Payment Act ("VWPA") provides for collective actions for violations of the VOWA: "[I]f an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2 [VOWA], the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)[.]" VA Code § 40.1-29 (J).

164.    Plaintiffs bring this VOWA count as a statutorily-authorized collective action pursuant to VA Code § 40.1-29(J), on behalf of themselves and the VOWA Collective as defined above.

165.    For time period of July 1, 2021 through present, Defendant has been, and continues to be, an "employer," and Plaintiffs and each similarly situated employee, have been,

or continue to be, an "employee" within the meaning of the Virginia Overtime Wage Act, VA Code § 40.1-29.2(A).

166.     The VOWA requires, "For any hours worked by an employee in excess of 40 hours in any one workweek, an employer shall pay such employee an overtime premium at a rate not less than one and one-half times the employee's regular rate, pursuant to 29 U.S.C. § 207." VA Code § 40.1-29.2(B). As such, Plaintiffs and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rates of pay for work performed in excess of forty hours per week.

167.     By failing to compensate Plaintiffs and similarly situated employees with overtime wages for their hours worked in excess of 40 hours per week, Defendant has violated, and continues to violate the VOWA.

168.     The VOWA provides, "Any employer that violates the overtime wage requirements of this section shall be liable to the employee for all remedies, damages, or other relief available in an action brought under subsection J of § 40.1-29 [The Virginia Wage Payment Act, VA Code § 40.1-29, ("VWPA")]." VA Code § 40.1-29.2(F).

169.     Defendant's pay policies and practices and conduct described herein constitute Defendant "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

170.     Plaintiffs hereby file their Written Consents to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiffs' Written Consent Forms are attached as Exhibits 1 and 2.

171.     Plaintiffs seek damages on behalf of themselves and the VOWA Collective in the

amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J), all other relief available under the VOWA and VWPA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT III: VIOLATIONS OF VIRGINIA WAGE PAYMENT ACT
### (Failure to Pay Wages / Unlawful Withholding from Wages Violations)
### (On Behalf of Plaintiffs Matthews and Medrano Only)

172.    Plaintiffs allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

173.    At all times relevant to this action, Plaintiffs Matthews and Medrano were each employed by Defendant within the meaning of the Virginia Wage Payment Act, VA Code § 40.1-29 (VWPA).

174.    The VWPA provides, inter alia, that an employer must pay wages due on regular pay periods and "Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code § 40.1-29(A).

175.    The VWPA further provides, inter alia, that "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

176.    As an Assistant Property Manager, Plaintiff Matthews was paid a regular rate

equal to $25.48 per hour.

177.     As an Accounts Payable/Receivable Assistant, Plaintiff Medrano was paid a rate equal to $17.16 per hour.

178.     The last day of Plaintiff Matthews' employment was January 27, 2022. She worked up to and including that day. Defendant did not pay Plaintiff Matthews her regular wages (or any pay) for work during her employment for the period January 17, 2022 through January 27, 2022. These regular wages should have been paid on February 4, 2022 had Plaintiff Matthews' employment not been terminated.

179.     The last day of Plaintiff Medrano's employment was January 28, 2022. She worked up to and including that day. Defendant did not pay Plaintiff Medrano her regular wages (or any pay) for work during her employment for the period January 17, 2022 through January 28, 2022. These regular wages should have been paid on February 4, 2022 had Plaintiff Medrano's employment not been terminated.

180.     Upon the termination of Plaintiffs' employments, by not paying Plaintiffs their regular wages on or before the date on which Plaintiffs would have been paid for such work had their employments not been terminated, Defendant violated Va. Code § 40.1-29(A).

181.     By failing to pay Plaintiffs their regular wages for their work for Defendant during the above periods of employment, Defendant committed unlawful withholdings from Plaintiffs' wages, in violation of the VWPA, Va. Code § 40.1-29(C).

182.     By failing to pay Plaintiffs their regular wages for their work for Defendant during the above periods of their employment, Defendant committed an unlawful failure to pay wages and unlawful withholding from wages in violation of the Virginia Wage Payment Act, Va.

Code § 40.1-29(A) and (C).

183.    Plaintiffs seek damages in the amount of unpaid and withheld wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code § 40.1-29(J), all other relief available under the VWPA, and all other such legal and equitable relief as the Court deems just and proper.

**COUNT IV: VIOLATIONS OF VIRGINIA WAGE PAYMENT ACT**
**(Failure to Pay Wages / Unlawful Withholding from Wages Violations)**
**(On Behalf of Plaintiff Medrano Only)**

184.    Plaintiffs allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

185.    The VWPA provides, inter alia, that an employer must pay wages due on regular pay periods and "Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code § 40.1-29(A).

186.    The VWPA provides, inter alia, that "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

187.    Throughout 2021, Defendant withheld a substantial part of Plaintiff Medrano's wages each pay period purportedly to pay for health insurance for Plaintiff's child.

188.     The relevant child support order provided that the child's father (not Plaintiff) pay for health insurance for the child. The child's father did pay for the health insurance and the child was covered by the father's health insurance.

189.     Nevertheless, despite the clear terms of the court order, in approximately December 2020, Defendant and its payroll agent notified Plaintiff that Defendant would be withholding from her wages to pay for health insurance for the child.

190.     Plaintiff Medrano did not provide any written and signed authorization for this withholding from her wages.

191.     Despite Plaintiff Medrano promptly and repeatedly calling this unauthorized withholding to the attention of Defendant and its payroll agent, providing Defendant and its payroll agent with the relevant child support order and citing the governing provisions of the same, Defendant continued with and failed to correct the unauthorized withholding every pay period through the end of her employment.

192.     This withholding from Plaintiff Medrano's wages directly contradicted the relevant child support order, was not authorized by law, and was not made pursuant to any written and signed authorization of Plaintiff, in violation of the VWPA, Va. Code § 40.1-29(C).

193.     Defendant failed to pay Plaintiff the wages it unlawfully withheld. It failed to pay these earned wages to Plaintiff when they were due on regular pay periods, and it failed to pay these earned wages to Plaintiff upon the termination of her employment on or before the date on which she would have been paid for such work had her employment not been terminated, all in violation of the VWPA, Va. Code § 40.1-29(A).

194.     By failing to pay Plaintiff Medrano her earned wages that it unlawfully withheld,

Defendant committed an unlawful failure to pay wages and unlawful withholding from wages in violation of the Virginia Wage Payment Act, Va. Code § 40.1-29(A) and (C).

195.    Plaintiff Medrano seeks damages in the amount of unpaid and withheld wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §and 40.1-29(J), all other relief available under the VWPA, and all other such legal and equitable relief as the Court deems just and proper.

## FLSA RELIEF REQUESTED

Wherefore, Plaintiffs on behalf of themselves and the FLSA Collective request the following relief against Defendant:

A.    An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.    Judgment that Plaintiffs and all similarly situated employees were non-exempt employees entitled to protection under the FLSA;

C.    Judgment against Defendant for violations of the overtime and/or minimum wage provisions of the FLSA;

D.    Judgment that Defendant's violations as described above were willful;

E.    Money damages for all unpaid overtime and/or minimum wage compensation owed to Plaintiffs and similarly situated employees;

34

F.      Liquidated damages in an amount equal to all unpaid overtime and/or minimum wages owed to Plaintiffs and similarly situated employees;

G.      Pre-judgment and post-judgment interest;

H.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law;

J.      Equitable and injunctive relief as allowed by law; and

K.      Any and all further relief permissible by law.

### **VOWA Relief Requested**

Wherefore, Plaintiffs on behalf of themselves and the VOWA Collective request the following relief against Defendant:

A.      An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.      Judgment that Plaintiffs and similarly situated employees were non-exempt employees entitled to protection under the VOWA;

C.      Judgment against Defendant for violations of the overtime provisions of the VOWA;

D.      Judgment that Defendant's violations as described above were willful;

E.  Judgement that Defendant's violations as described herein constitute Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA or VOWA]" within the meaning of VA Code § 40.1-29(J) and (K);

F.  Money damages for all unpaid wages, unpaid minimum wages, and overtime compensation owed to Plaintiffs and similarly situated employees;

G.  Liquidated damages in an amount equal to all unpaid wages, minimum wages, and overtime owed to Plaintiffs and similarly situated employees;

H.  Pre-judgment and post-judgment interest;

I.  Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

J.  An amount equal to "triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J);

K.  Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the VOWA, VWPA, or other applicable law; and

L.  Any and all further relief permissible by law.

### VWPA Relief Requested

Wherefore, Plaintiffs individually request the following relief against Defendant:

A.  Judgment that Plaintiffs were non-exempt employees entitled to protection under the VWPA;

B.  Judgment against Defendant for violations of the provisions of the VWPA;

C.  Judgment that Defendant's violations as described above were willful;

D.      Judgement that Defendant's violations as described herein constitute Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of VA Code § 40.1-29(J) and (K);

E.      Money damages for all unpaid wages and unlawfully withheld wages owed to Plaintiffs;

F.      Liquidated damages in an amount equal to all unpaid wages and unlawfully withheld wages owed to Plaintiffs;

G.      Pre-judgment and post-judgment interest;

H.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I.      An amount equal to "triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §40.1-29(J);

J.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the VOWA, VWPA, or other applicable law; and

K.      Any and all further relief permissible by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all claims and issues so triable.

Respectfully submitted,

ASHLEY MATTHEWS and VERONICA MEDRANO,
individually and on behalf of all others similarly situated,
By Counsel

Dated: March 18, 2022

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiffs

## CERTIFICATE

I HEREBY CERTIFY that unless service is waived a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendant or its authorized agents at the following addresses, or any other addresses where Defendant may be found:

COMMERCIAL CONDOMINIUM MANAGEMENT COMPANY
SERVE:   John Motz, Registered Agent
         8456 Tyco Rd, Ste A
         Vienna, VA, 22182

/s/Timothy Coffield
Counsel for Plaintiffs