UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ASHLEY MATTHEWS and VERONICA
MEDRANO, on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

    CASE NO. 1:22-cv-00297-AJT-TCB

COMMERICIAL CONDOMINIUM
MANAGEMENT COMPANY,

    Defendant.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENTS**

Plaintiffs Ashley Matthews and Veronica Medrano (collectively, "Plaintiffs") and Defendant Commercial Condominium Management Company ("Defendant") (Plaintiffs and Defendant are collectively referred to as "the Parties"), by and through undersigned counsel, hereby jointly move the Court for an Order approving an agreed settlement between the Parties and dismissing Plaintiffs' Amended Complaint with prejudice. True and accurate copies of each Plaintiff's proposed FLSA/VWPA Settlement Agreement ("Settlement Agreement") are attached hereto as Exhibits 1 and 2. As explained below, the Court should approve the Settlement Agreements because the terms are fair and equitable, and properly consider the risks and uncertainties the Parties would face should the case not settle.

**I.    INTRODUCTION**

In this Fair Labor Standards Act ("FLSA") case, Plaintiffs and Defendant jointly request that the Court enter an Order (1) approving the settlements reached between the Parties to resolve

a bona fide dispute regarding each Plaintiff's alleged entitlement to damages under the FLSA and related state wage laws, Defendant's denial of the same, (2) dismissing Plaintiff's claims with prejudice, and (3) maintaining jurisdiction to enforce the terms of the Settlement Agreements. As a result of a private mediation, the Parties have negotiated a settlement for each Plaintiff in this action, and have agreed to resolve the disputed factual and legal issues on the terms set forth in the Settlement Agreements.

The Parties seek Court approval of their Settlement Agreements because claims under the FLSA, like those settled and released by Plaintiff in the Settlement Agreement, may not be waived without Department of Labor or court approval. *See* 29 U.S.C. § 216(b) and (c); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 371 (4th Cir. 2005) ("The rights guaranteed by the FLSA cannot be waived or settled without prior DOL or court approval."); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (accord). Upon examination of the Settlement Agreements, the Court will find that the terms are fair and should be approved. The Settlement Agreements reflect reasonable compromises of issues actually in dispute, the settlements were reached in an adversarial context in which all Parties were represented by competent and experienced counsel, and the totality of the proposed settlements are fair and reasonable.

## II. PROCEDURAL HISTORY

On March 18, 2022, Plaintiffs filed this action, seeking to recover alleged unpaid overtime wages and other alleged unpaid wages, liquidated damages, and attorneys' fees pursuant to the Fair Labor Standards Act, Virginia Overtime Wage Act ("VOWA"), and Virginia Wage Payment Act ("VWPA"). (Dkt. 1.) On May 18, 2022, Plaintiffs' filed an Amended Complaint asserting the same basic claims. (Dkt. 10.) On June 1, 2022, Defendant filed an Answer denying any and all liability, and asserting that each Plaintiff was properly paid for all hours worked. (Dkt. 11.) The

Parties subsequently initiated settlement discussions and exchanged informal discovery, including the exchange of necessary wage and payroll records, attendance records, job duty records, as well as other business records, in a good faith effort to engage in full and complete settlement discussions regarding the allegations.

On June 22, 2022, the Parties attended a full-day mediation session with the Honorable Barry R. Poretz, retired United States Magistrate Judge of this Court. During the mediation, the Parties reached verbal agreement as to the resolution of each Plaintiff's claims. These terms were subsequently memorialized in writing. The Parties drafted and agreed to the terms contained in the Settlement Agreements, and now file this Joint Motion to Approve Settlement Agreement and supporting memorandum, which is accompanied by a Proposed Order.

### III. THE PARTIES' LITIGATION POSITIONS AND PERTINENT SETTLEMENT TERMS

Plaintiff Matthews alleges she was employed by Defendant as an Assistant Property Manager. She claims that she and other Assistant Property Managers were misclassified as exempt employees under the FLSA and VOWA, and consequently were denied overtime pay to which they were entitled when they worked in excess of 40 hours in a week. Plaintiff Matthews further alleged she routinely worked in excess of 40 hours per week.

Plaintiff Medrano alleges she was employed by Defendant as a Receptionist and Accounts Receivable/Payable Specialist. She claims that she and other Receptionists and Accounts Receivable/Payable Specialists were misclassified as exempt employees under the FLSA and VOWA, and consequently were denied overtime pay to which they were entitled when they worked in excess of 40 hours in a week. Plaintiff Medrano further alleged she routinely worked in excess of 40 hours per week.

Plaintiffs filed this action as a putative collective action with respect to the above practices and alleged employee misclassification. However, the Parties reached a settlement agreement as to each Plaintiff's claims without other plaintiffs having joined the case. Thus, the Parties agree that settlement of the two Plaintiffs' claims will fully resolve the case. In addition, Defendant disputed that class treatment would have been appropriate for this case because it has fewer than 20 employees total. The purported class size for Assistant Property Managers would have been five people (not including Plaintiff Matthews), and only three people for Bookkeepers (not including Plaintiff Medrano). Accordingly, the Parties properly settled this matter on an individual Plaintiff basis.

Defendant denied all of the allegations in the Amended Complaint, asserting that Plaintiffs (1) were properly classified as exempt from the FLSA and VOWA overtime provisions as administrative employees, and therefore were not entitled to overtime pay, and (2) did not work overtime hours, or if they did, worked far fewer overtime hours than estimated in the complaint.

Plaintiffs also sought liquidated damages in the complaint. Defendant denied that Plaintiffs were not entitled to liquidated damages under the FLSA because Defendant always acted reasonably and in good faith, and with reasonable grounds to believe that its actions did not violate the FLSA or any other applicable wage and hour law.

Plaintiffs also sought damages for at least a three-year period under the overtime laws. Defendant denied that Plaintiffs were entitled to more than two years of damages because Defendant always acted reasonable, and did not at any time willfully violated any applicable overtime laws.

Each Plaintiff also sought damages under the VWPA for Defendant's alleged late payment of their final paychecks. Defendant denied that it violated the VWPA because each Plaintiff received at least as much as her normal pay on the final pay period.

Plaintiff Medrano also sought damages under the VWPA for alleged unauthorized deductions from her paychecks in 2021. Defendant denied that any wages were improperly withheld under the VWPA as to Plaintiff Medrano.

According to the Plaintiffs' initial damages model for Plaintiff Matthews, based on Plaintiff Matthews' anticipated testimony and recollection about her hours worked, if Plaintiff Matthews prevailed on her overtime claim and the jury found Plaintiff was owed overtime wages, and that Defendant's violation was willful, Plaintiff Matthews alleges that she would receive approximately $33,316 in unpaid overtime wages covering the three years preceding the filing of this action.

According to the Plaintiffs' initial damages model for Plaintiff Medrano, based on Plaintiff Medrano's anticipated testimony and recollection about her hours worked, if Plaintiff Medrano prevailed on her overtime claim and the jury found Plaintiff was owed overtime wages, and that Defendant's violation was willful, and that Plaintiff Medrano was entitled to equitable tolling giving her a five-year (instead of two or three year) damages period, Plaintiff Medrano alleges that she would receive approximately $18,428.50 in unpaid overtime covering the five years preceding the filing of this action.

Each Plaintiff alleges that she would have been entitled to liquidated (double) damages under the FLSA unless Defendant proved that the alleged violations were in good faith. *See* 29 U.S.C. § 260. Thus, on Plaintiff Matthews' best day at trial under the FLSA, the total amount owed to Plaintiff for unpaid wages and liquidated damages under the FLSA would equal $66,632. On Plaintiff Medrano's best day at trial under the FLSA, the total amount owed to Plaintiff for unpaid

5

wages and liquidated damages under the FLSA would equal $36,857. Under VOWA, if Plaintiffs had proven that Defendant "knowingly failed" to pay overtime owed, Plaintiffs allege that they would have been entitled to triple damages instead of double damages for the period after July 1, 2021. *See* VA Code §§ 40.1-29.2; 40.1-29(J)&(K). In addition, had Plaintiffs prevailed, they allege that they would have been entitled to reasonable costs and attorney fees. 29 U.S.C § 216(b).

If a jury found in favor of Defendant, Plaintiff Matthews and Plaintiff Medrano would have no damages, and would have to pay the costs of an unsuccessful litigation, making them worse off financially than if they had not filed suit.

During the course of informal discovery and settlement discussions, Defendant provided documentary evidence that it asserted supported its positions that Plaintiff Matthews was properly classified as exempt, and that Plaintiff Medrano worked significantly fewer overtime hours than estimated in Plaintiff Medrano's initial damages model. For example, Defendant produced a performance evaluation and copies of contracts that Plaintiff Matthews signed on behalf of the company, which Defendant asserted supported its position that Matthews was an exempt administrative employee. With respect to Plaintiff Medrano, Defendant produced records of absences from Medrano's Outlook calendar, which Defendant asserted indicated that Medrano missed a significant number of days spread across almost every workweek, making it unlikely, according to Defendant, that she ever worked in excess of 40 hours per week. Thus, Defendant asserted, even if Plaintiff Medrano prevailed on the misclassification claim, she would have little or no overtime damages.

The Parties recognize that the expenses attendant to further litigation and trial would be significant, and that the risks to both sides presented by continued litigation. The Parties therefore decided to control the outcome of the case by entering into the Settlement Agreements.

Under the Settlement Agreements, Defendant will pay the gross settlement amounts specified in the two Settlement Agreements, which are inclusive of attorneys' fees and costs. Each Settlement Agreement is broken down into different payments allocating the total payment between (1) wages, (2) liquidated damages, and (3) attorneys' fees and costs. The settlement reached by the Parties calls for a release of the FLSA, VOWA, and VWPA claims, and payment to each Plaintiff of her respective gross settlement amount which is inclusive of attorneys' fees and expenses of litigation.

## IV.   THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT

The Court should approve the Settlement Agreements because each settlement is the product of contested litigation, the Parties are represented by competent and experienced counsel, and each Settlement Agreement reflects a reasonable compromise over disputed issues. The Settlement Agreements' provisions are fair and reasonable in light of the disputed issues.

As the Court noted in *LaFleur v. Dollar Tree Stores, Inc.,* "[i]in determining whether a settlement is 'fair, adequate, and reasonable' there is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed." 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (internal citations omitted). When evaluating whether to approve a settlement agreement, the Court may consider the following factors:

(1)   the extent of discovery that has taken place;

(2)   the stage of the proceedings, including the complexity, expense and likely duration of the litigation;

(3)   the absence of fraud or collusion in the settlement;

(4)   the experience of counsel who have represented the plaintiffs;

(5)   the probability of plaintiffs' success on the merits and

(6)   the amount of the settlement in relation to the potential recovery.

*Id.*

Here, the Parties reached this settlement after engaging in informal discovery of damages calculations, necessary wage and payroll records, attendance records, job duty records, as well as other business records to allow them to engage in full and complete settlement discussions regarding the allegations. The mediation that resulted in the settlement was also overseen by a retired magistrate judge of this Court. Had the matter proceeded to the trial, the Parties anticipate that these materials would have been central to the case. By settling this matter before engaging in extensive formal discovery, the Parties saved the significant expense of protracted ESI discovery. While each Plaintiff believed she had a reasonable probability of success on the merits, based on her evidence and anticipated testimony, Defendant believed it had a reasonable probability of success on the merits, based on its evidence and defenses.

The total amount of Matthews' settlement is $26,000.00. After deduction of attorney fees, the amount of the settlement going to Plaintiff Matthews for wages and liquidated damages ($15,600.00), using Plaintiff's initial, pre-discovery damages model, is approximately 47% of Plaintiff's best potential recovery of unpaid overtime wages ($33,316.00); 23% of her best potential recovery on the FLSA wage and liquidated damages claims ($66,632.00), assuming she prevailed on all FLSA issues: misclassification, time worked, willfulness, and good faith / liquidated damages; and 17% of her best potential recovery had she prevailed on all of the above issue plus proven that Defendant "knowing failed" to pay her overtime owed under VOWA ($ 90,616.00).

The settlement payment to Plaintiff Matthews greatly exceeds the outcome ($0, minus litigation costs) she would have received had Defendant prevailed on the misclassification issue.

The Matthews settlement agreement (Exhibit 1) allocates Plaintiff Matthew's $15,600.00 payment into $7,800.00 in wages with all proper withholdings and $7,800.00 in non-wage liquidated damages, consistent with 29 U.S.C. § 216(b).

The total amount of Medrano's settlement is $7,000.00. After deduction of attorney fees, the amount of the settlement going to Plaintiff Medrano for wages and liquidated damages ($4,200.00), using Plaintiff's initial, pre-discovery overtime damages model, is approximately 23% of Plaintiff's best potential recovery of unpaid overtime wages ($18,428.50); 11% of her best potential recovery on the FLSA wage and liquidated damages claims ($36,857.00), assuming she prevailed on all FLSA issues: misclassification, equitable tolling to five (5) years, time worked, willfulness, and good faith / liquidated damages; and 10% of her best potential recovery had she prevailed on all of the above issue plus proven that Defendant "knowing failed" to pay her overtime owed under VOWA ($43,165.00).

The settlement payment to Plaintiff Medrano greatly exceeds the outcome ($0 or minimal damages, minus litigation costs) she would have received had Defendant prevailed on the misclassification issue, or on its position that Plaintiff due to her attendance record never or rarely worked in excess of 40 hours in a workweek.

The Medrano settlement agreement allocates Plaintiff's $4,200.00 payment into $2,100.00 in wages with all proper withholdings and $2,100.00 in non-wage liquidated damages, consistent with 29 U.S.C. § 216(b).

Also factoring into the Parties' settlement discussions, mediation with Judge Poretz, and decision-making were the Plaintiffs' VWPA claims of late payment of their final paycheck, and Plaintiff Medrano's VWPA claim that Defendant withheld portions of her paychecks in 2021, totaling approximately $ 6,409.00, for health insurance for a child without her authorization.

9

Plaintiff Medrano's disability discrimination claims, referenced in the complaint, were resolved pursuant to a separate general settlement agreement, which is not before the Court.

The Settlement Agreements provide for attorney's fees in the total amount of $13,200.00 ($10,400.00 in fees as to Matthews' wage claims and $2,800.00 as to Medrano's wage claims), which represents 40% of each Plaintiffs' total settlement. As of the filing of this brief, Plaintiffs' counsel has expended more than 90 hours in preparing, litigating, mediating and resolving these wage cases. Under the Vienna Metro Matrix, Plaintiffs' counsel anticipates that his reasonable hourly rate in this case would be $500 or greater, calling for a lodestar at this stage of $45,000 or greater. *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-CV-00502, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011) (2011 range of hourly rates in Northern Virginia, $465-640 for attorneys with 8-10 years of experience). The fee amount provided by these settlements therefore represents a discount of more than 70% on fees based on counsel's 90 hours ($13,200 / $45,000 = approximately 29% of current lodestar) and a greater discount below what could have been awarded on a fees motion had the case been litigated and resulted in an adjudicated judgment for Plaintiff.

A thorough review of the Settlement Agreements will reveal that each settlement is fair, adequate, and reasonable. Plaintiffs were represented by counsel experienced in FLSA litigation who protected the rights of his clients during the negotiations. Each settlement reflects a reasonable compromise regarding bona fide disputes between the parties regarding the questions of liability and the amount of alleged damages under the FLSA.

Further, the Parties both agree that each settlement is fair, just, and adequate to settle each Plaintiff's claims. The endorsement of the Settlement Agreements by counsel for both Parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for

each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, No. 04-cv-1965, 2008 U.S. Dist. LEXIS 37449, at * 14 (S.D. Tex. May 7, 2008). Here, Plaintiff's counsel is fully aware of the factual contentions of the Parties, and is in the best position to opine as to whether this settlement produces fair results for Plaintiff after consideration of risks. Each Plaintiff made an educated decision to agree to the terms of her settlement. Plaintiffs and their counsel have concluded that a settlement with Defendant on the terms set forth in the Settlement Agreements is fair, reasonable, adequate, and in the best interests of each Plaintiff.

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the proposed Settlement Agreements in this matter, attached as Exhibits 1 and 2. The Parties further respectfully request that, should the Court approve the Settlement Agreements, it also enter an order dismissing this action with prejudice, while maintaining jurisdiction to enforce the terms of the settlement.

Dated: July 15, 2022

Respectfully submitted,

**ASHLEY MATTHEWS AND VERONICA MEDRANO**

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
**Coffield PLC**
106-F Melbourne Park Circle
Charlottesville, VA 22901
Email: tc@coffieldlaw.com

*Counsel for Plaintiffs*

**COMMERCIAL CONDOMINIUM MANAGEMENT COMPANY**

/s/Martin J. Amundson
Amy Miller (VSB No. 70698)
Martin J. Amundson (VSB No. 86735)
**Buchanan Ingersoll & Rooney PC**
1737 King Street
Suite 500
Alexandria, VA 22314-2727
Tel.: (703) 838-6598
Fax: (703) 836-2021
Email: amy.miller@bipc.com
 martin.amundson@bipc.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/Timothy Coffield
Counsel for Plaintiffs
